**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JONATHAN DINARDO, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

GENERAL MOTORS LLC, ONSTAR LLC,
LEXISNEXIS RISK SOLUTIONS INC.,

      Defendant

**Case No. _____**

**Jury Trial Demanded**

**Class Action Complaint**

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff, Jonathan DiNardo, individually and on behalf of all others similarly situated, who files this class action complaint against the below-referenced Defendants and alleges and avers as follows on personal knowledge, investigation, or information and belief.

## I. INTRODUCTION

1.  This case arises from the surreptitious collection of consumers' driver behavior data through computer software installed in automobile vehicles or linked application, and the sharing or sale of that data without fully notice, knowledge, or consent.

2.  Modern vehicles are as much electronic and digital products as they are mechanical ones. From engines, to transmissions, to suspension systems, ever more functions in vehicles are being operated by, or at least integrated with, electronics and software.

3.  Among the more modern vehicle innovations is the integration of digital software that captures a variety of metrics about a vehicle's condition and performance, such as fuel levels or distances traveled. But less overt metrics are captured as well. This includes non-obvious

metrics not about a vehicle itself, but rather about drivers' own behavior. Average speed; percentage of time one drives at speeds greater than 80mph; the frequency and intensity of acceleration and braking; and late night driving—all of this and more is capable of, and is, being digitally recorded, stored, and viewed through vehicle software and applications.

4.     Defendant General Motors, LLC and its affiliate, OnStar LLC, install tracking features capable on numerous GM vehicles. While touted as a means to enhance "the driving experience," in reality General Motors and OnStar are surreptitiously recording a plethora of driver-behavior metrics.

5.     Not only that, but General Motors and OnStar also furnish or sell drivers' behavior data to credit agencies and/or data-aggregation companies such as Defendant LexisNexis Risk Solutions Inc. or Verisk, unbeknownst to drivers.

6.     These credit companies or data aggregators, in turn, sell drivers' data to, among others, automobile insurance companies who can and do use the data to increase quotes and premiums for drivers' automobile insurance. All of this occurs, for a profit, without drivers' full knowledge or consent.

7.     In sum, General Motors and OnStar are secretly recording personal drivers' behavior data without drivers' full knowledge and consent; these firms sell drivers' behavior data to credit or data-aggregator companies like LexisNexis without drivers' full knowledge and consent; firms like LexisNexis sell drivers' behavior data to automobile insurance companies without drivers' full knowledge and consent. The net result is every entity in this clandestine series of transactions is profiting from the sale of drivers' data, while drivers themselves not only do not see a penny from the sale of their own data, but often see their insurance quotes or premiums inexplicably go up.

8.     Plaintiff DiNardo is one of the many drivers exploited by Defendants' illicit scheme.  His GM vehicle, capable of supporting OnStar tracking software, collected his driver behavior data without his full knowledge and consent.

9.     Plaintiff brings this action for economic damages and injunctive relief on behalf of all persons whose driver behavior data were captured, stored, and/or transferred or sold without full notice or consent.  Defendants' wrongful conduct constitutes a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Count I), a violation of state consumer protection laws including the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1, *et seq.* (Count II), tortious interference with drivers' relations with their automobile insurers (Count III), common law invasion of privacy (Count IV), and unjust enrichment (Count V).

## II.     JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to the 28 U.S.C. § 1331 by virtue of Count I arising15 USC  out or relating to the FCRA.  The Court also has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

11.     This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1407, and because each Defendant has sufficient minimum contacts in Pennsylvania, and because each Defendant has otherwise intentionally availed itself of the markets within Pennsylvania through business activities, such that the exercise of jurisdiction by this Court is proper and necessary. Further, Plaintiff resides in Pennsylvania.

12.     Venue is proper in this District because plaintiff resides in this District, 28 U.S.C. § 1391(b)(1); "a substantial part of the events or omissions giving rise to the claim occurred" in this District, 28 U.S.C. § 1391(b)(2); and Defendants are subject to the personal jurisdiction of this Court, 28 U.S.C. § 1391(b)(3).

## III.     PARTIES

13.     Defendant GM Motors LLC ("GM") is a Delaware limited liability company with its principal place in Detroit, Michigan.  The sole member and owner of GM is General Motors Holding LLC.  General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.  The sole member and owner of General Motors Holdings LLC is General Motors Company, which is a Delaware corporation, with its principal place of business in the State of Michigan, and is a citizen of Delaware and Michigan. At all times pertinent this Complaint, GM manufactured and sold vehicles that included functionality for driving tracking software or applications, including but not limited to OnStar, MyChevrolet, and MyCadillac.

14.     Defendant OnStar LLC ("OnStar") is a Delaware limited liability company with its principal place in Detroit, Michigan. On information and belief, the sole member and owner of OnStar is GM, or General Motors Holdings LLC or General Motors Company, as described above. At all times pertinent this Complaint, OnStar operated driving tracking software or applications, including but not limited to OnStar, MyChevrolet, and MyCadillac.

15.     Defendant LexisNexis Risk Solutions Inc. ("LexisNexis"), on information and belief, is a Delaware corporation with its principal place of business in Alpharetta, Georgia. At all times pertinent this Complaint, LexisNexis obtained drivers' behavior data and made it available to third parties including automobile insurance companies.

16.     Plaintiff Jonathan DiNardo is a citizen of Pennsylvania.  Plaintiff drives a Chevrolet Equinox, model year 2018, that was manufactured and sold by GM and capable of supporting driver tracking software or applications operated or maintained by GM and/or OnStar.

## IV.     FACTUAL ALLEGATIONS

### A. GM and OnStar's Surreptitious Tracking and Sharing of Driver Behavior Data

17.     GM vehicles starting with model year 2015 have the capability to use OnStar software and related applications.

18.     The software and applications, which include applications such as MyChevrolet, MyBuick, and MyCadillac, allows GM and OnStar to record, store, and transmit data not just about vehicle condition (e.g., engine or transmission status, etc.), but also driver behavior.  As noted *supra*, among data collected are metrics such as average speed; percentage of time speed exceeds 80mph; the frequency and intensity of acceleration and braking; and late night driving—all of this and more is capable of, and is, being digitally recorded, stored, and viewed through onboard vehicle software.  The data are collected after each drive.

19.     While GM claims it does not enroll drivers in OnStar and does "not collect driving behavior data" without consent, that does not appear to be the case.  It appears GM and OnStar track, store, and share driver behavior data whether or not a driver consents or not.

20.     Further, GM's and OnStar's processes do not adequately apprise drivers that their driver behavior data will be collected, furnish, or sold to third parties (without compensation to drivers), let alone sold to third parties who resell the data to automobile insurers resulting in higher insurance quotes or premiums (*see infra* Part IV.B).

21.     To the contrary, GM and OnStar misleadingly represent that any data collected by the "optional" service simply is to "help [drivers] maximize their vehicle's overall performance,

reduce vehicle wear and tear and encourage safe driving."[1]

22.     Nothing in GM's and OnStar's disclosures mentions that it will furnish or sell drivers' driving performance data to third parties, let alone to third parties which, in turn, provide that data to automobile insurance companies, resulting in higher insurance quotes or premiums.

23.     GM's and OnStar's concealment runs counter to its purported use of appropriate safeguards to protect drivers' data.

24.     In fact, GM and OnStar very recently admitted, for the very first time, that they *had* been sharing drivers' data with third parties such as LexisNexis:  "As of March 20, 2024, OnStar Smart Driver customer data is no longer being shared with LexisNexis or Verisk."[2]

25.     Plaintiff and other class members suffered actual harm and the risk of future harm as a result of GM and OnStar's illicit activities, including but not limited to invasion of their privacy interest in their own data, loss of control over their own data, the sale of their own data without compensation, and adverse credit reporting and impaired credit scores.

**B.  LexisNexis's Monetization of Driver Behavior Data**

26.     LexisNexis is a self-described "analytics provider for industries around the globe, including financial services, retail/ecommerce, logistics and telecommunications."[3]

27.     Among LexisNexis's data analytics offerings is the firm's capabilities relating to insurance, including automobile insurance, to "help insurers and automakers streamline business processes, control costs and improve customer experiences."[4]

28.     LexisNexis "helps" automobile insurers by collecting and consolidating third-party data that can be used to set or modify (most often, increase) drivers' automobile insurance quotes

---

[1] https://www.onstar.com/support/faq/smart-driver (last accessed Mar. 26, 2024).
[2] *Id.*
[3] https://risk.lexisnexis.com/ (last accessed Mar. 26, 2024).
[4] *Id.*

or premiums.[5]

29.     Among the data LexisNexis offers to insurers—for a price—is driver behavior data. LexisNexis combines "[e]verything [insurers] need to assess driving risk, all in one place."

30.     LexisNexis brags that its data analytics provides "comprehensive insights about household drivers, vehicles, and policy history."[6]  It touts its "telematics solutions" as "provid[ing] timely connected car data and mobility risk insights[.]"[7]

31.     LexisNexis "receive[s] and manage[s] data from connected vehicles, mobile apps and third-party services.  The driving behavior data received is normalized and used to generate scores and attributes that are more easily ingested into insurance workflows to help better assess risk."[8]  This allows insurers to "predict insurance loss potential,"[9] i.e., set quotes or premiums. LexisNexis is unabashed about what it offers to automobile insurers for a price.  LexisNexis promises insurers: "improve your ability to assess risk *and capture otherwise missed premium*."[10]

32.     In other words, LexisNexis obtains driver behavior data, repackages it, and sells its to automobile insurers, which often results in higher insurance premiums for the drivers' whose data is being used.  This occurs without drivers' full knowledge and consent.

33.     LexisNexis does not disclose that it obtains driver behavior data from GM and OnStar without drivers' knowledge or consent, let alone by compensating drivers themselves for their data.  Rather, LexisNexis knowingly purchases or otherwise obtains the driver behavior data that GM and OnStar surreptitiously collects.  Then, LexisNexis turns a profit for itself by marketing that driver behavior data to automobile insurers, who in turn often set or increase

---

[5] https://risk.lexisnexis.com/insurance/auto?intcmp=ushp.risk-decision-making.body.ins-auto (last accessed Mar. 26, 2024).
[6] https://risk.lexisnexis.com/insurance/auto (last accessed Mar. 26, 2024).
[7] https://risk.lexisnexis.com/insurance/auto/quoting-underwriting#Risk (last accessed Mar. 26, 2024).
[8] https://risk.lexisnexis.com/products/telematics-ondemand (last accessed Mar. 26, 2024).
[9] https://risk.lexisnexis.com/insurance/auto/quoting-underwriting#Automation (last accessed Mar. 26, 2024).
[10] https://risk.lexisnexis.com/products/driving-behavior-360 (last accessed Mar. 26, 2024) (emphasis added).

drivers' quotes or premiums based on the data. Everyone in this series of transactions profits, except drivers themselves—the very people whose data is being collected and brokered without their full knowledge and consent, and without compensation.

34. Plaintiff and other class members suffered actual harm and the risk of future harm as a result of GM and OnStar's illicit activities, including but not limited to invasion of their privacy interest in their own data, loss of control over their own data, the sale of their own data without compensation, and adverse credit reporting and impaired credit scores.

## C. **Fraudulent Concealment, Tolling, and Continuing Violations**

35. Plaintiff's and other class members' causes of action could not and did not accrue prior to the filing of this Complaint because each Defendant actively concealed and did not reveal their improper tracking, accessing, recording, storing, furnishing, or selling of driver behavior data.

36. Plaintiff and other class members exercised reasonable diligence but could not discover each Defendant's wrongful conduct earlier.

37. Because of this, Plaintiff and other class members did not discover, nor could they have discovered through reasonable and ordinarily diligence, each Defendant's deceptive, fraudulent, and unlawful conduct alleged herein. Each Defendant's obfuscations lulled Plaintiff and other class members into believing that their driver behavior data was not being improperly accessed.

38. Alternatively, any statute of limitation or prescriptive period is equitably tolled on account of fraudulent concealment. Each Defendant affirmatively concealed from Plaintiff and other class members its unlawful conduct.

39. Each Defendant's wrongful conduct and obfuscation constitute continuing violations for purposes of any limitations period.

## V.  CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action both individually and as a class action pursuant to Fed.

R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against Defendants on Plaintiff's own behalf and on behalf

of the Class(es) defined below, to the extent class members from these jurisdictions can be grouped

together for purposes of class treatment, and within the applicable limitations periods:

> **The Data Capture Class:** All drivers whose GM-manufactured vehicles capable of supporting OnStar driver behavior tracking software, and whose behavior data was recorded.

> **The Illicit Data Transfer Class:** All drivers whose GM-manufactured vehicles capable of supporting OnStar driver behavior tracking software, and whose data were furnished to third parties.

> **The LexisNexis Illicit Credit-Reporting Class:** All drivers whose GM-manufactured vehicles capable of supporting OnStar driver behavior tracking software, and whose data were obtained by LexisNexis who in turn offered or furnished drivers' data to third parties.

41.     Excluded from the Class(es) are: (a) any judge or magistrate presiding over this

action, and members of their families; (b) each Defendant and its employees, officers, directors,

and agents; (c) each Defendant's legal representatives, assigns, and successors; and (d) all persons

who properly execute and file a timely request for exclusion form any Court-approved class.

42.     Plaintiff reserves the right to narrow or expand the foregoing class definitions, or

to create or modify subclasses, including state-specific subclasses, as the Court deems necessary.

43.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the

Class(es).

44.     **Numerosity**: While the exact number of class members cannot be determined

without discovery, they are believed to consist of potentially millions of consumers nationwide.

The Class(es) are therefore so numerous that joinder of all members is impracticable.

45.     **Commonality**: Common questions of law and fact exist as to all class members, including, but not limited to:

a.   Whether GM manufactured and sold vehicles capable of supporting and/or equipped with software or applications capable of recording, storing, and transferring class members' driver behavior data such as OnStar's software;

b.   Whether OnStar operated and maintained software or applications capable of recording, storing, and transferring class members' driver behavior data;

c.   Whether GM and OnStar used software or applications to record, store, and transfer class members' driver behavior data;

d.   Whether GM and OnStar recorded, stored, and transferred class members' data without full knowledge and consent;

e.   Whether GM and OnStar furnished or sold class members' data to third parties;

f.   Whether LexisNexis obtained class members' driver behavior data without full knowledge and consent;

g.   Whether LexisNexis offered, furnished, or sold class members' driver behavior data to third parties without full knowledge or consent;

h.   Whether Defendants' conduct constitutes violations of the FCRA, consumer protection statutes, and common law principles against tortious interference, invasion of privacy, and unjust enrichment;

i.   When Plaintiff's and class members' causes of action accrued;

j.   Whether Defendants fraudulently concealed Plaintiff's and other class members' causes of action; and

k.   the amount and extent of damages to Plaintiff and other class members, and the

-10-

scope of monetary and injunctive relief as to same.

46.    **Typicality**: Plaintiff's claims are typical of other class members' claims. Plaintiff and other class members all suffered the same type of economic harm. Plaintiff has substantially the same interest in this matter as all other class members, and their claims arise out of the same set of facts and conduct as the claims of all other class members.

47.    **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other class members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiff has no disabling conflict with other class members and will fairly and adequately represent the interests of class members.

48.    The elements of Rule 23(b)(2) are met. Defendants acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief are appropriate respecting the Class(es) as a whole.

49.    The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other class members have claims against Defendants, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely, or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or

impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiff's counsel, highly experienced in consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## VI.    CAUSES OF ACTION

### A. Count I – Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

50.    Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in Pennsylvania and those in other states the laws of which do not conflict with Pennsylvania law.

51.    Plaintiff incorporates the foregoing factual and class allegations as though fully set forth herein.

52.    Plaintiff and other class members are persons and consumers within the meaning of the FCRA.

53.    GM's and OnStar's recording, storing, and furnishing of Plaintiff's and other class members' driver behavior data to third parties for purposes of credit reporting within the meaning of the FCRA, constitutes an impermissible purpose and use of data under the FCRA.

54.    LexisNexis obtains driver behavior data from GM or OnStar without Plaintiff's and other class members' full knowledge and consent.

55.    LexisNexis's provision of credit information that includes driver behavior data to third parties, including automobile insurance companies, constitutes the furnishing of consumer reports under the FCRA and an impermissible purpose and use of data under the FCRA.

56.    LexisNexis furnishes reports to third parties, including automobile insurance companies, without Plaintiff's and other class members' full knowledge and consent.

57.     LexisNexis's obtaining, maintaining, and furnishing of Plaintiff's and other class member's driver behavior data without full knowledge and consent violates the FCRA's permissible uses of such data.

58.     GM, OnStar, and LexisNexis is each liable for negligently and willfully violating the FCRA by acquiring, maintaining, accessing, and furnishing Plaintiff's and other class members' driver behavior data without permissible purpose or authorization under the FCRA.

59.     As a result of Defendants' wrongful conduct, Plaintiff and other class members have been suffered damage, including but not limited to improper use of driver behavior data and wrongful impairment of credit.

## B. Count II - Violation of Consumer Protection Laws (Against All Defendants)

60.     Plaintiff alleges this claim for relief on behalf of themselves and all similarly situated class members, both those in Pennsylvania and those in other states, the laws of which do not conflict with Pennsylvania law.

61.     Plaintiff incorporates the foregoing factual and class allegations as though fully set forth herein.

62.     Defendant has violated the consumer protection statutes as follows:

    a.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

    b.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

    c.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq.*;

    d.     Defendant engaged in unfair competition or unfair or deceptive acts or

practices in violation of Ark. Code § 4-88-101, *et seq.*;

e. Defendant violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, *et seq.*;

f. Defendant violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

g. Defendant violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

h. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

i. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

j. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*;

k. Defendant engaged in unfair competition or unfair or deceptive acts  or practices in violation of D.C. Code § 28-3901, *et seq.*;

l. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

m. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq.*;

n. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

o. Defendant engaged in unfair competition or unfair or deceptive acts or

practices in violation of Idaho Code § 48-601, *et seq.*;

p.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, *et seq.*;

q.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

r.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, *et seq.*;

s.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

t.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

u.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

v.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

w.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

x.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

y.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

z.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

aa.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

bb.     Defendant engaged in unfair competition or unfair or deceptive acts  or practices in violation of Mo. Rev. Stat. § 407.0 10, *et seq.*;

cc.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

dd.     Defendant engaged in unfair competition or unfair or deceptive acts  or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

ee.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

ff.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

gg.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

hh.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

ii.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

jj.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

kk.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

ll.     Defendant engaged in unfair competition or unfair or deceptive acts or

practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

mm.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

nn.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

oo.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

pp.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq.*;

qq.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

rr.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

ss.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

tt.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

uu.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

vv.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*;

ww.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

xx.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

yy.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

zz.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*;

aaa.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*; and

bbb.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, *et seq.*, the applicable statute for the Commonwealth of Puerto Rico.

63.    Defendants' conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

64.    Each Defendant, directly or through its agents, employees, and/or subsidiaries, violated the state statutes by knowingly and intentionally accessing, recording, storing, and furnishing to third parties class members' driver behavior data without full knowledge or consent.

65.    Defendants' conduct as alleged herein constitutes unfair, deceptive, misleading, or otherwise actionable practices as to Defendants' wrongful conduct. To the extent applicable, each Defendant knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances.

66.    As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and other class members have suffered damages – an ascertainable loss – in an amount to be proved at trial. Defendants' conduct was material in

class members use or purchase of GM vehicles.  Absent Defendants' wrongful conduct, Plaintiff and other class members would not have uses or purchased GM vehicles capable of supporting OnStar software or applications, or, alternatively, would not have purchased on the same terms (e.g., purchased vehicles for less), had they known the truth.

67.     To the extent applicable, pre-suit notice and/or a demand letter was sent to each Defendant prior to the filing of the Complaint.

### C.  Count III – Tortious Interference

68.     Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in Pennsylvania and those in other states, the laws of which do not conflict with Pennsylvania law.

69.     Plaintiff incorporates the foregoing factual and class allegations as though fully set forth herein.

70.     Plaintiff and other class members had contractual or quasi-contractual arrangements with automobile insurance companies.

71.     Defendants' wrongful accessing, recording, storing, and furnishing to third parties class members' driver behavior data interfered with class members' contractual or quasi-contractual arrangements with automobile insurance companies.

72.     Defendants intended to harm or interfere with class members' contractual or quasi-contractual arrangements with automobile insurance companies.  There is no plausible purpose to share driver behavior data to credit reporting firms who will knowingly share that data with automobile insurance companies than for that data to be used for the purpose of the transaction (which often was for a profit), viz., that the data will impact or interfere with the insurance quotes or premiums charged by automobile insurance companies to class members.

73.     No privilege or other justification exists to excuse each Defendant's tortious interference as alleged herein.

74.     As result of each Defendant's tortious interference, Plaintiff and other class members were injured and suffered monetary or credit-related damages, as well as the increased likelihood of same in the future.

### D.  Count IV – Invasion of Privacy

75.     Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in Pennsylvania and those in other states, the laws of which do not conflict with Pennsylvania law.

76.     Plaintiff incorporates the foregoing factual and class allegations as though fully set forth herein.

77.     Plaintiff and each other class member has a right or interest against improper intrusion into seclusion.  This includes a right or interest in the privacy of their own personal data, including driver behavior data.  Within the confines of a vehicle, consumers have a reasonable expectation in privacy and that their driving behavior is a private affair.

78.     Each Defendant unreasonably intruded upon class members' interest in seclusion by intentionally accessing, recording, storing, furnishing, and/or selling class members' driver behavior data.  Each Defendant's conduct was highly offensive to a reasonable person, especially to the extent each Defendant profited off the sale of the surreptitiously obtained driver behavior data.

79.     As a direct and proximate result of Defendants' offensive actions Plaintiff and other class members have suffered damages – an ascertainable loss – in an amount to be proved at trial.

### E. **Count V –Unjust Enrichment**

80.     Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in Pennsylvania and those in other states, the laws of which do not conflict with Pennsylvania law.

81.     Plaintiff incorporates the foregoing factual and class allegations as though fully set forth herein.

82.     Each Defendant was unjustly enriched at the expense of Plaintiff and each other class member.  GM and OnStar was unjustly enriched by selling GM vehicles to class members which were capable of supporting or equipped with software or applications that tracked driver behavior data, while the extent to which GM or OnStar might share or sell that data having not been fully disclosed.  GM and OnStar also were unjustly enriched to the extent they used or sold class members' driver behavior data to third parties without full knowledge and consent.  LexisNexis was unjustly enriched by offering, furnishing, or selling class members' driver behavior data to third parties, including but not limited to automobile insurance companies, without full knowledge or consent.

83.     Plaintiff and each other class member conferred a direct benefit on GM and OnStar by using or purchasing GM vehicles capable of supporting or equipped with software or applications that tracked driver behavior data.  Plaintiff and other class members also conferred a direct benefit on GM, OnStar, and LexisNexis through their personal driver behavior data.

84.     Each Defendant profited from accessing, offering, furnishing, or selling class members' driver behavior data without full knowledge and consent, or with any financial consideration flowing to class members.

85.     Plaintiff and each other class member were unjustly deprived of money or property

obtained by each Defendant's improper recording, storing, accessing, furnishing, or selling of class members' driver behavior data.  It would be inequitable and unconscionable for each Defendant to retain the profit, benefit, and other compensation obtained as a result of each Defendant's wrongful conduct alleged herein.

86.     In the alternative to the other causes of actions alleged herein, Plaintiff and other class members have no adequate remedy at law.

87.     Plaintiff and each other class member are entitled to seek and do seek restitution from each Defendant as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by each Defendant by virtue of its wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following judgment:

A.     An order certifying this action as a class action;

B.     An order appointing Plaintiff as Class Representative and appointing undersigned counsel as Class Counsel to represent the Class;

C.     A declaration that each Defendant is liable pursuant to each and every one of the above-enumerated causes of action;

D.     An order awarding appropriate preliminary and/or final injunctive relief against the conduct of each Defendant described herein;

E.     Payment to Plaintiff and class members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including, but not limited to, the full amounts paid for GM Vehicles, the price differential for GM Vehicles with and without tracking software

capability, the value of each class member's driving behavior data, and each Defendant's ill-gotten gains;

     F.     An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

     G.     An award of statutory penalties to the extent available;

     H.     Interest as provided by law, including, but not limited to, pre-judgment and post-judgment interest as provided by rule or statute; and

     I.     Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

Dated: March 27, 2024

              */s/ Ruben Honik*
              Ruben Honik
              David J. Stanoch, Of Counsel
              **Honik LLC**
              1515 Market Street, Suite 1100
              Philadelphia, PA 19102
              Tel: 267-435-1300
              ruben@honiklaw.com
              david@honiklaw.com